UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

　　*Plaintiff,*

v.

DAVID E. WINSTON, JR.,

　　*Defendant.*

Case No. 1:95-cr-7-RCL-1

## MEMORANDUM OPINION

In the summer of 1993, defendant David E. Winston, Jr., murdered two rival crack cocaine dealers in the District of Columbia. Mot. at 5–6, ECF No. 30; Opp'n at 2–3, ECF No. 44. After he was indicted for those crimes, he pleaded guilty in federal District Court in February 1995 to one count of distribution of five grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii), and to one count of second-degree murder while armed, in violation of D.C. Code §§ 22-2403 & 3202. Opp'n at 3–4, ECF No. 44. The District Court, Judge Joyce Hens Green presiding, sentenced Winston to 121 months' incarceration for his drug offense and to a consecutive 15 years-to-life sentence for one of the 1993 murders. *Id.* at 5. A day later, Winston pleaded guilty in D.C. Superior Court to the other 1993 murder, also in violation of D.C. Code §§ 22-2403 & 3202. *Id.* The Superior Court, Judge Shellie Bowers presiding, sentenced Winston to another 15 years-to-life sentence for the second murder, which ran consecutive to the federal sentences. *Id.* Winston completed his federal drug sentence on October 20, 2003, but remains incarcerated for his two murder convictions. *Id.*

Winston now moves the Court to "reduce [his] sentence" for his drug offense under the First Step Act of 2018. Mot. at 1, ECF No. 30. He argues that his crime was a "covered offense"

under the Act, that he is eligible for a retroactive "reduction," despite having finished that sentence, and that he so deserves a reduction. *Id.* at 9, 11; Reply at 1–6, ECF No. 47. The United States does not dispute that Winston's crime was a "covered offense." Opp'n at 1, ECF No. 44. But it argues that because Winston already served his drug sentence, his request for a "reduced sentence" is "moot," and that even if that request is not moot, the Court should exercise its discretion to deny it. *Id.* at 11–15. Having considered the motion, opposition, and reply thereto, the Court will **DENY** Winston's First Step Act motion for three independent reasons. First, Winston's drug crime was not a "covered offense" under the plain terms of the First Step Act. Second, even were it a "covered offense," the Act does not authorize "reductions" of already-completed sentences. And third, even if it did, the Court finds in its statutory discretion that Winston does not merit such relief.

Pending separately before the Court is Winston's motion *pro se* for a reduced sentence under 18 U.S.C. § 3582(c)(2), based on Amendment 782 to the U.S. Sentencing Guidelines. Mot., ECF No. 29. For similar reasons, the Court will **DENY** that request as well. Section 3582, like the First Step Act, does not authorize the "reduction" of a completed sentence. *See* 18 U.S.C. § 3582(c)(2). And even if it did, the Court would deny the requested relief as inconsistent with "the sentencing factors set forth in section 3553(a)." *Id.*; *see also* Mem. Op., ECF No. 25.

## I.   BACKGROUND

In the early 1990s, Winston joined a drug distribution conspiracy that operated out of what was then called the Fulton Hotel, located in the District of Columbia. Opp'n at 2, ECF No. 44 (citing the presentence investigation report). Winston procured illegal narcotics for the conspiracy's ring-leader, Marlene Parks, and sold them in and around the premises. *Id.* In May 1993, Winston murdered a competing drug dealer, Raymond Williams, who also operated out of the Fulton. *Id.* Upon encountering Williams in the hotel's lobby, Winston shot him fourteen times.

2

*Id.* About five weeks later, Winston murdered another rival drug dealer, John Maier. *Id.* After Parks told Winston that Maier had stolen Parks's drugs, which was false, Winston entered Maier's room in the Fulton and shot Maier twenty-one times. *Id.* Maier was unarmed and lying in bed. *Id.*

Around the same time, law enforcement began to investigate the drug activities unfolding in and around the Fulton. *Id.* at 3. In the winter of 1994, officers documented Winston perpetrating five narcotics transactions. *Id.* Both Winston and the United States agree that those five sales involved eighty grams of crack cocaine in total. *Id.*; Mot. at 5, 11, ECF No. 30; Opp'n at 3, ECF No. 44. After his arrest for those transactions, Winston admitted his role in Parks's drug conspiracy. Opp'n at 3, ECF No. 44. And, during the investigation, witnesses also identified Winston as the murderer of both Williams and Maier. *Id.*

In January 1995, a federal grand jury returned a sixteen-count indictment against Winston, charging him with five counts of unlawful distribution of five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii), five counts of unlawful distribution of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a), one count of unlawful possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(c), and five counts of unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b). Opp'n at 4, ECF No. 44. In the related federal case 1:94-cr-00296-RCL-11, Winston was also indicted for the murder of John Maier, and in the D.C. Superior Court case 1995 FEL 1865, he was charged with the murder of Raymond Williams. *Id.* After negotiating a deal, Winston pleaded guilty to the two murders and to a single count of distributing five grams or more of cocaine base. *Id.* at 3–4. In exchange, prosecutors dropped the thirteen other felony charges. *Id.* As mentioned, Winston completed his resultant, 121-month federal drug sentence on

October 20, 2003. *Id.* at 5. He remains incarcerated for his two second-degree murder convictions, having thus far been denied parole. *Id.*

Much like he was not a model citizen, Winston has not been a model inmate either. His prison disciplinary record, as the United States Parole Commission explained in September 2013, reflects "serious negative institutional behavior." Parole Action, ECF No. 44-2. In 2006, prison officials found Winston in possession of a dangerous weapon. *Id.* Before that, they discovered that he had smuggled heroin into the facility. *Id.* And before that, he was disciplined for two assaults, one of which resulted in serious injury to the victim. *Id.* The Commission also noted that Winston's murders of Williams and Maier reflected "unusual cruelty," since they involved the shooting of two "unarmed and vulnerable" victims dozens of times. *Id.* For those reasons, the Commission concluded that there was "a reasonable probability that [Winston] would not obey the law if released," and that his "release would endanger the public safety." *Id.*

Since he has been unable to obtain parole, Winston now challenges his continued incarceration under the First Step Act of 2018 and under 18 U.S.C. § 3582, in light of Amendment 782 to the Sentencing Guidelines. He argues that despite having completed his drug sentence, "reducing" that sentence "would allow him to be brought before the parole board sooner." Mot. at 7, ECF No. 30; *see also* Reply at 4, ECF No. 47. The United States argues that his request is "moot" and presents no "live case or controversy," since Winston has already completed the relevant sentence. Opp'n at 11, ECF No. 44.

The Court does not agree that Winston's First Step Act motion is moot under Article III, § 2 of the U.S. Constitution. Winston retains a litigable interest in challenging the date he appears before the parole board. But the Court also does not agree that the First Step Act or § 3582 authorize the so-called "reduction" of a completed sentence. Additionally, for reasons the Court

4

recently explained in *United States v. Smith*, Winston's crack sales do not constitute "covered offenses" under the First Step Act. Case No. 09-CR-237-RCL-1, 2020 WL 5816496, at *1 (D.D.C. Sept. 30, 2020). And even if either the First Step Act or § 3582 permitted the relief Winston seeks, the Court, in its discretion, would decline those requests. The Court, therefore, will **DENY** Winston's motions under both the First Step Act and 18 U.S.C. § 3582(c)(2) for a reduced sentence.

## II.    LEGAL STANDARD

The standards governing Winston's challenges—those set out in the First Step Act of 2018 and in § 3582—differ from each other in ways that will shape the Court's analysis. Thus, the Court will briefly explain each of those standards, beginning with the First Step Act. The First Step Act sought to extend a related and earlier law, the Fair Sentencing Act of 2010. 124 Stat. 2372. Congress passed the Fair Sentencing Act to alleviate sentencing disparities between offenses involving crack and powder cocaine. Before the Fair Sentencing Act's passage, 21 U.S.C. § 841 mandated a five-year minimum sentence for possession of five grams of crack cocaine—an amount far smaller than that needed to trigger the minimum for a powder offense. The Fair Sentencing Act thus raised the threshold for a five-year mandatory minimum for a crack offense from five to twenty-eight grams. But that revision did not apply to defendants sentenced before August 3, 2010, the date of the Fair Sentencing Act's enactment.

Eight years later, Congress passed the First Step Act of 2018. 132 Stat. 5194. Section 404(a) of that Act gives retroactive effect to the sections of the Fair Sentencing Act that remedied the crack-powder disparity. As a result, the First Step Act permits some defendants sentenced before August 3, 2010 to request sentences reduced in line with the Fair Sentencing Act's modifications. Whether to reduce those sentences remains within courts' discretion. And not

all crack offenders are eligible to make such requests. Rather, they must show that they committed

the sort of "covered offense" for which the First Step Act permits a reduction.

Section 404(a) of the First Step Act defines which crack violations are "covered offenses."

§ 404(a). Specifically, it provides as follows:

> (a) DEFINITION OF A COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

Section 404(b), in turn, explains that once the Court determines the defendant committed a

"covered offense," it then may "impose a reduced sentence" as if the Fair Sentencing Act were in

effect during the original sentencing. It states:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

And § 404(c) clarifies that though courts *may* "impose a reduced sentence," "[n]othing in this

section shall be construed to *require* a court to reduce any sentence pursuant to this section."

*Id.* at § 404(c) (emphasis added). Instead, whether to grant such reductions remains within courts'

sound discretion.

Section 3582(c)(2), by contrast, permits the Court to reduce a term of imprisonment based

on a Sentencing Guidelines range later lowered by the U.S. Sentencing Commission. As it states:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> [. . .]
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons,

6

> or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, like the First Step Act, § 3582 commits the decision whether to grant such reductions to district courts' discretion. But unlike the First Step Act, § 3582 explicitly mandates that courts consider both the § 3553 sentencing factors and relevant Sentencing Commission policy statements when evaluating whether to grant those reductions.

## III.   DISCUSSION

### A. Because "Covered Offense" Refers to Real-World Conduct in Violation of a Statute Rather than a Defendant's Statute of Conviction, Winston is Ineligible for a Sentence Reduction Under § 404.

Both Winston and the United States agree that his conviction for violating 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii) is a "covered offense" under the First Step Act. Mot. at 9, ECF No. 30; Opp'n at 1, ECF No. 44. But whether Winston's offense was, indeed, "covered" is a threshold issue that determines whether his motion falls within this Court's subject-matter jurisdiction. *See United States v. White*, 415 F. Supp. 3d 15, 31 n.6 (D.D.C. 2019) (noting that district courts "lack[ ] jurisdiction" to reduce sentences for offenses not covered under the First Step Act); *see also United States v. Duggan*, 771 F. App'x 261, 261 (4th Cir. 2019) (unpublished) (same); *United States v. Green*, 405 F.3d 1180, 1184 (10th Cir. 2005) ("A district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."). It is an elementary principle that parties may not expand a federal court's subject-matter jurisdiction by consent or waiver. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). And it is equally basic that this Court must consider *sua sponte* its subject-matter jurisdiction. *Id.* Upon review, the Court holds that Winston's violation is not a "covered offense," and thus that this Court has no

jurisdiction to award the requested relief. *See* 18 U.S.C. § 3582 (stating that without specific authorization to do so, courts "*may not* modify a term of imprisonment once it has been imposed") (emphasis added).

As the Court explained in *Smith*, "the text of § 404(a) makes the trigger for eligibility [for a reduced sentence] the defendant's real-world conduct in violation of the statute, not merely the statute of conviction." *Smith*, 2020 WL 5816496, at \*3. Winston's case is an apt illustration of why that reading must be correct. Winston argues that his offense is "covered" because his statute of conviction criminalized distributing five grams or more of crack cocaine, its minimum threshold later increased to twenty-eight grams, and trafficking five grams today merits a lesser sentence. But the parties agree, and the sentencing Court found by a preponderance of the evidence, that Winston distributed *eighty* (80) grams of crack cocaine. Mot. at 11, ECF No. 30. Winston, therefore, is obviously not among the class of crack dealers who distributed greater than five but less than twenty-eight grams of crack, and who thus would have faced mandatory minimums before 2010 but not after. Rather, Winston's real-world conduct has *always* satisfied 21 U.S.C. § 841(b)(1)(B)(iii), whether measured against the pre- or post-2010 versions. Winston, therefore, has never suffered any prejudice from the crack-powder disparity the Fair Sentencing and First Step Acts sought to correct.

Winston's motion essentially invites this Court to step through the looking glass and ignore a reality that everyone—the government, the Court, and Winston himself—acknowledges: that Winston dealt eighty grams of crack cocaine. Winston's motion would have the Court pretend that he was responsible for a mere five-gram sale. But his real-world conduct—his "violation of a Federal criminal statute"—involved an amount of crack cocaine over fifteen times higher. § 404(a). The same minimums would apply to that conduct today, since Winston dealt enough

crack to surpass even the new, twenty-eight-gram threshold. *See* § 841(b)(1)(B)(iii). Accordingly, his violation's statutory penalties were not "modified," and Winston's offense is not "covered." And because it is not "covered," Congress has conferred no jurisdiction upon this Court to disturb the finality of Winston's sentence.

     *B.  The First Step Act Does Not Authorize Reduction of an Already-Completed Sentence, and Thus It Does Not Authorize the Requested Relief.*

Even if Winston's violation were a "covered offense," the First Step Act does not authorize the "reduction" of an already-completed sentence. The Act's relevant portion is § 404(b), and specifically its provision that the Court may "impose a reduced sentence" for covered offenses. § 404(b). The United States argues that Winston's motion "should be denied as moot" since it presents no "live case or controversy," a reference to Article III, § 2 of the U.S. Constitution. Opp'n at 11, ECF No. 44.[1] Winston responds that his motion is not moot, since "the BOP [Bureau of Prisons] would adjust Mr. Winston's sentence calculation if any one part is reduced, and thus Mr. Winston [has] a legally cognizable interest" in an adjustment that could hasten his release. Reply at 1, ECF No. 47.

The Court agrees with Winston that his case is not constitutionally moot under Article III, § 2. But it does not agree that the First Step Act, as a matter of statutory interpretation, authorizes the relief that he seeks. Because the parties' briefing blurs the line between those constitutional and statutory issues, the Court now examines why they are distinct and how that distinction affects Winston's motion under the First Step Act.

---

[1] The United States draws this label from *United States v. Martin*, a Second Circuit case analogous to Winston's in which the panel majority dismissed the movant's petition as "moot" because it did "not operate to create a live case or controversy." 974 F.3d 124, 130 (2d Cir. 2020). This Court agrees with the Second Circuit's ultimate disposition— that such movants have no right to relief under the First Step Act—but it reaches that conclusion through the proper interpretation of the First Step Act, rather than via Article III mootness.

Article III, § 2 provides that "the judicial power shall extend to . . . cases [and] controversies." U.S. Const., Art. III, § 2. From this so-called "case or controversy" requirement, the Supreme Court has derived several justiciability doctrines intended to regulate the type of suits that federal courts may entertain. *See* Richard H. Fallon, Jr., et al., *The Federal Courts and the Federal System* 49 (7th ed. 2015). One such doctrine—standing—requires the party initiating an action to show, at the suit's outset, a concrete, real-world injury capable of redress by a favorable decision. *Hartnett v. Penn. State Educ. Assoc.*, 663 F.3d 301, 305 (3d Cir. 2020). And that litigable interest must persist "throughout the litigation." *Spencer v. Kenma*, 523 U.S. 1, 7 (1998). If it is extinguished after the suit is filed, the case is said to become "moot," leaving a federal court without jurisdiction to entertain it. *Id.*

Mootness and standing, which focus on real-world, redressable injuries, are themselves distinct from the question whether the plaintiff may vindicate that injury with a cause of action. *See, e.g.*, *Lexmark Intern., Inc. v. Static Control Components*, 572 U.S. 118, 128 n.4 (2014). In some cases, the plaintiff may have a cause of action, but no real-world injury, as when the plaintiff invokes a legal right against an inaccurate credit report but can show no real-world harm from the report's inaccuracy. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545, 1550 (2016). In other cases, the plaintiff may have a real-world injury but no cause of action, as when she alleges economic loss to her business from fair competition. Fallon, et al., *supra*, at 145–46. In either instance, the plaintiff's suit must fail, but the reasons for that failure are distinct. The first presents a subject-matter jurisdictional defect under Article III, while the second simply invokes no legally protected interest.

Winston's motion better aligns with the latter scenario. He plainly has alleged a real-world, litigable interest in his motion's success: that winning could shorten the duration of his present

confinement. That is a classic litigable interest. *See, e.g.*, *Kenma*, 523 U.S. at 7 ("[I]ncarceration . . . constitutes a concrete injury[.]"). And if the Court were to construe the First Step Act to permit the relief he seeks, Winston's injury could be redressed. For if the Court granted his motion, he might come "before the parole board sooner" and could get an earlier chance to secure his release. Mot. at 7, ECF No. 30.[2] His motion, therefore, is not moot. The real issue is one of statutory interpretation: does the First Step Act, by its terms, actually authorize this Court to award the relief that Winston seeks? And the answer to that question is "no."

> *B.1. To "Impose a Reduced Sentence" Means to Compel Submission to a Shorter Duration of Imprisonment Than Was Originally Imposed for the "Covered Offense."*

Section 404(b) permits courts to "impose a reduced sentence" "for a covered offense." § 404(b). The meaning of those phrases forecloses Winston's argument. The imposition of a reduced sentence means, essentially, to compel a shorter period of imprisonment than was originally compelled for the "covered offense." *Id.* Winston's problem? Even were his drug crime a "covered offense," the Court no longer can compel a shorter period of imprisonment "for [that] offense." *Id.* (emphasis added). The only terms of imprisonment Winston is now serving are those for his D.C. murder convictions—crimes that plainly are not "covered offense[s]" under the Act. *Id.* And so because any relief the Court now provides could affect the duration of only *those* terms of imprisonment, rather than the term of imprisonment for a "covered offense," the Act does not authorize the relief Winston seeks.

---

[2] Put differently, saying that Winston's motion is "moot" because the Act does not provide the relief he seeks is to conflate the justiciability analysis with the merits analysis. Winston has a continuing, real-world injury: that the length of his drug sentence prolongs the time it will take him to come before the parole board. That injury has persisted throughout this litigation. And it is capable of redress, because if the Court agreed with his view of the statute, then it could "reduce" his completed sentence and perhaps hasten his parole review. But because Winston is wrong about the proper interpretation of the First Step Act, he has no legal action to redress that injury, and so his claim fails on the merits.

To see why that is the case, consider the meaning of "to impose a reduced sentence." § 404(b). To "impose," in this context, means to "force one to submit to," as in to "impose [a] punishment." *Impose*, Webster's New International Dictionary (3d ed. 1964). "Sentence," as 21 U.S.C. § 841(b)(1)(B)'s penalties clause makes clear, refers to the defendant's "term of imprisonment." 21 U.S.C. § 841(b)(1)(B) (explaining that those who violate the provision "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40[.]").[3] "Term" refers to the imprisonment's "duration." *Term*, Webster's New International Dictionary (3d ed. 1964). And "reduce" means "to diminish in size, amount, [or] extent." *Reduce*, *id.* So putting all of that together, the Act authorizes this Court to compel submission to a shorter duration of imprisonment than that which was originally compelled for the "covered offense."[4]

Why do those definitions matter? Because they show that the Act cannot possibly provide the remedy that Winston seeks. Winston is not trying to reduce the duration of his confinement *for his drug offense*. Rather, he seeks to escape a collateral consequence—the far-off date of his parole review—that his expired drug sentence now incurs on *different* sentences for *other* offenses; namely, his murder convictions. Winston served out his drug sentence—the sentence for his "covered offense"—long ago. § 404(b). No longer can the Court compel submission to a shorter

---

[3] Winston asserts that his "unjust" sentence caused him to "spen[d] 70 more months (5.8 more years) imprisoned for a crack cocaine offense than he would have had he been convicted after the Fair Sentencing Act had passed." Mot. at 8, ECF No. 30; Reply at 5, ECF No. 47. The Court finds this speculative assertion unpersuasive. The present statute continues to authorize prison sentences for up to 40 years for an § 841(b)(1)(B)(iii) violation. *See* § 841(b)(1)(B). So the People, speaking through their elected representatives, apparently consider the latter sentence a just penalty for the conduct involved in this case. And it strikes the Court as rather likely that an upward variance or departure would be appropriate in this case, which involves a multiple murderer who killed in service of his drug conspiracy.

[4] And properly defining these terms avoids a quandary that Judge Sack, dissenting from the majority's opinion in the Second Circuit's *Martin* case, noted: "If the notion that imposition of a sentence requires the placement of a burden were correct, how could district courts 'impose' a sentence of time served?" *Martin*, 974 F.3d at 146 (Sack, J., dissenting). The answer is that the statute does not describe the "placement of a burden," but submission to a shorter duration of confinement. Imposing a sentence of time served upon a current inmate compels his submission to a shorter duration of confinement—whatever period the inmate already served, minus the period vitiated by the Court's imposition of the reduced sentence. But, of course, that relief becomes impossible when the inmate has already completed his entire sentence for the "covered offense," since there is no future portion of confinement for the Court to "reduce." § 404(b).

period of confinement for *that* offense. The Court could do so only if Winston were still serving the sentence imposed "for" it. *Id.*

But Winston's present term of imprisonment stems from wholly distinct offenses—his two 15 years-to-life sentences for his murders of Williams and Maier. Winston claims, essentially, that ruling he over-served for his drug offense could compel a shorter duration of confinement for his murder sentences. But the Act states that the Court may impose a reduced sentence only "for a covered offense." § 404(b). So even assuming Winston's drug offense were "covered," his current incarceration is no longer "for" that covered offense. *See For*, Webster's New International Dictionary (3d ed. 1964) ("[B]ecause of" or "on account of"). Rather, he is now incarcerated for his two murder convictions, each of which carried its own, distinct sentence. The Act authorizes no modification of *those* sentences, since they obviously are not "covered offenses." § 404(b).

### C.   The Court, In Its Statutorily Conferred Discretion, Declines to Award Winston the Requested Relief.

Even if Winston could surmount those statutory interpretation hurdles, the Court still would decline to grant any relief. As an initial matter, Winston proposes no standards by which the Court should exercise its statutorily recognized discretion under the First Step Act. By contrast, the United States contends that this Court must analyze Winston's motion under the sentencing factors outlined in 18 U.S.C. § 3553. *See, e.g.*, Opp'n at 13, 13 n.5, ECF No. 44. The Court renews its disagreement with that proposition. *See Smith*, 2020 WL 5816496, at *9 (citing *United States v. Moore*, 963 F.3d 725, 727 (8th Cir. 2020)). Nothing in the relevant statutory framework requires consideration of those factors. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("[A] matter not covered is not covered[.]"). Section 3582, which governs the imposition and modification of sentences, states that courts must consider the § 3553 sentencing factors in three specific situations: during the initial imposition of a sentence,

when adjudicating a compassionate release motion, and when considering whether to reduce a sentence that was "based on" a later-lowered Guidelines range. § 3582(a), (c)(1)(A) & (c)(2). By contrast, the portion of § 3582 relevant to the First Step Act, § 3582(c)(1)(B), does not mention § 3553. Rather, it states that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute[.]" *Id.* at (c)(1)(B). That "statute" here is, of course, the First Step Act. And its relevant portion, § 404, also mentions nothing about the § 3553 factors. By contrast, it says that "[n]*othing* in this section shall be construed to require a court to reduce any sentence pursuant to this section." § 404(c). So the Act does not incorporate those factors either.

And even were the Court bound to consider them, they would lend Winston no support. Section 3553 calls for an analysis of "the nature and circumstances of the offense," "the seriousness of the offense," "adequate deterrence," and the need to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2). The Court does not take seriously Winston's argument that his criminal behavior was, in essence, a youthful transgression. Mot. at 15, ECF No. 30. As the Court explained, Winston was deeply involved in a conspiracy to distribute crack cocaine, and he perpetrated two brutal murders in service of that conspiracy. The Parole Commission, tellingly, noted that Winston's two killings, during which he shot unarmed victims thirty-five times in total, reflected his "unusual cruelty." Parole Action, ECF No. 44-2. And his multiple, egregious disciplinary violations while incarcerated—involving drugs, weapons, and assaults—are yet further proof that he warrants no relief. *Id.* As the Parole Commission pointed out, "there is a reasonable probability [that Winston] would not obey the law if released," and that his "release would endanger the public safety." *Id.* Given that record, Winston flunks § 3553 across the board. The need to punish and deter Winston's heinous crimes and to protect the public from his illicit

behavior defeats his claim for relief under the First Step Act. The Court, therefore, declines to award it.

### D. *Section 3582(c)(2), Like the First Step Act, Does Not Authorize the Reduction of an Already-Completed Sentence.*

Separate from his First Step Act motion, Winston also moves *pro se* for a sentence reduction under 18 U.S.C. § 3582(c)(2), in light of Amendment 782 to the Sentencing Guidelines. Amendment 782 "reduces by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties" for certain drug offenses. *See Amendment 782*, United States Sentencing Commission, https://www.ussc.gov/guidelines/amendment/782. And § 3582 provides that "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range . . . subsequently lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(2). So, says Winston, because his drug offense under 21 U.S.C. § 841 fits that description, and because he is "striving to be [a] positive man," the Court should reduce his sentence. Mot. at 1, ECF No. 29.

Yet much like the First Step Act, § 3582 does not authorize the Court to "reduce" the term of imprisonment associated with an already-completed drug sentence. Imagine if Winston's only crime had been the drug offense. It would be logically incoherent under § 3582, just as under the First Step Act, to seek imposition of a "reduced" sentence—a shortened duration of confinement—when the defendant had already served the original sentence's entire duration. Winston, of course, remains confined, but only for two separate murder sentences. Those sentences, unlike his drug offense, were not "based on" Amendment 782—the subsequently changed portion of the

Guidelines. § 3582(c)(2). Thus, § 3582's plain terms do not authorize the Court to reduce Winston's term of imprisonment for his D.C. murder convictions.

> E. *Even If § 3582 Authorized Such Relief, the Court Would Deny It After Considering the § 3553 Sentencing Factors.*

Unlike the First Step Act, § 3582 mandates that the Court consider the § 3553 sentencing factors when deciding whether to impose a reduced sentence. As the United States points out, Winston's "*pro se* § 3582(c)(2) motion should be denied for the same reasons" as was his motion under the First Step Act: Winston's "severe criminal history, poor disciplinary record," and the favorable plea deal he received that let him avoid trial for thirteen additional felonies. Opp'n at 7 n.3, ECF No. 44. The Court agrees. It declines to award Winston relief under the § 3553 factors for the reasons explained in Part III.C of this Opinion. *See supra* pages 14–15.

## IV.   CONCLUSION

Winston's motion to reduce his sentence under the First Step Act, accordingly, will be **DENIED**. His motion *pro se* for a sentence reduction under 18 U.S.C. § 3582 and Amendment 782 also will be **DENIED**. A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 14th day of December, 2020.

Royce C. Lamberth
United States District Judge